1 | Gregory Lantier (*pro hac vice*)
Gregory.Lantier@wilmerhale.com
2 | Haixia Lin (*pro hac vice*)
Haixia.Lin@wilmerhale.com
3 | WILMER CUTLER PICKERING
    HALE AND DORR LLP
4 | 2100 Pennsylvania Ave. N.W.
Washington, DC 20037
5 | Telephone: (202) 663-6000
Fax: (202) 663-6363
6 |
Liv Herriot (State Bar No. 267694)
7 | Liv.Herriot@wilmerhale.com
WILMER CUTLER PICKERING
8 |   HALE AND DORR LLP
2600 El Camino Real, Suite 400
9 | Palo Alto, CA 94306
Telephone: (650) 858-6000
10 | Fax: (650) 858-6100

11 | Henry Nikogosyan (State Bar No. 326277)
Henry.Nikogosyan@wilmerhale.com
12 | WILMER CUTLER PICKERING
    HALE AND DORR LLP
13 | 350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
14 | Telephone: (213) 443-5300
Fax: (213) 443-5300
15 |
Attorneys for Defendant
16 | SHOPIFY, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DKR Consulting LLC,<br><br>                    Plaintiff,<br><br>     v.<br><br>Shopify, Inc.<br><br>                    Defendant. | Case No.  2:23-cv-06904-HDV-JC<br><br>**REPLY IN SUPPORT OF DEFENDANT SHOPIFY, INC.'S RULE 12(B)(6) MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Hearing Date: May 9, 2024 at 10:00 a.m.<br>Courtroom: 5B<br>Judge: Hon. Hernán D. Vera |

**TABLE OF CONTENTS**

I.  ARGUMENT ................................................................................................................ 2

    A.  At *Alice* Step One, The "Focus" of the Buy Button Patent Claims is an Unpatentable Abstract Idea. ...................................................................................... 2

    B.  Under *Alice* Step Two, The Claims Of The Buy Button Patents Do Not Add An Inventive Concept .................................................................................................... 5

    C.  DKR's Expert Declaration Does Not Make the Buy Button Patents Valid ............. 8

    D.  DKR's Argument That Claims Featured in the Amended Complaint Are Not Representative Is Without Merit .............................................................................. 9

II. CONCLUSION ........................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)..................................................................................6

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016).............................................................................. 6-7

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
  573 U.S. 208 (2014)........................................................................................ *passim*

*Apple Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016)..................................................................................3

*Bilski v. Kappos*,
  561 U.S. 593 (2010)................................................................................................10

*Bridge & Post, Inc. v. Verizon Commications, Inc.*,
  778 F. App'x 882 (Fed. Cir. 2019) ............................................................................5

*Cleveland Clinic Foundation v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017)................................................................................10

*Credit Acceptance Corp. v. Westlake Services*,
  859 F.3d 1044 (Fed. Cir. 2017)..................................................................................2

*Customedia Technologies, LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020)....................................................................1, 2, 4, 5

*DDR Holdings LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014)..................................................................................7

*In re Elbaum*,
  No. 2021-1719, 2021 WL 3923280 (Fed. Cir. Sept. 2, 2021) ...................................4

*Electric Power Group, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)..................................................................................5

*Free Stream Media Corp. v. Alphonso Inc.,*
  996 F.3d 1355 (Fed. Cir. 2021).............................................................................4, 8

*In re Herbalife, Ltd. Securities Litigation*,
  No. 14-cv-2850-DSF-JCG, 2015 WL 12734014 (C.D. Cal. July 28, 2015)  ........8, 9

*In re MannKind Securities Actions*,
  835 F. Supp.2d 797 (C.D. Cal. 2011) .......................................................................9

*PersonalWeb Technologies. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) ....................................................................................7

*In re Rosenberg*,
    813 F. App'x 594 (Fed. Cir. 2020) ............................................................................................3

*Rutherford v. USA Gas*,
    No. 19-cv-01448-JAK-FFM, 2020 WL 13925954 (C.D. Cal. Mar. 31, 2020) .....................8, 9

*Solutran, Inc. v. Elavon, Inc.*,
    9311 F.3d 1161 (Fed. Cir. 2019)..............................................................................................9

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)................................................................................................5

*Trinity Info Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) ..............................................................................................10

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)..................................................................................................2

**Statutes**

35 U.S.C. § 101 ...........................................................................................................1, 2, 6, 10

1    Shopify established in its Memorandum in Support of its Motion to Dismiss (Dkt. 37-1
2    ("Br.")) that all claims of the Buy Button Patents are invalid on their face under 35 U.S.C. § 101
3    because they are directed to performing the abstract idea of combining a product advertisement
4    with an order form, and the limitations of the claims fail to recite any technological
5    improvement to the workings of a computer.  In its Opposition, DKR does not dispute that the
6    longstanding business practice of using advertisements with order forms is an unpatentable
7    abstract idea.  Rather, the only argument DKR makes on the merits is that the asserted claims
8    should survive Shopify's motion because they provide three alleged improvements to "web
9    widgets": the use of a widget builder, an embedding element, and a display element.  Dkt. 40
10   ("Opp.") at 1.  DKR also makes two procedural arguments, both of which fail and would not
11   impact the outcome of this motion regardless.  *Id.* at 7-11.

12   None of DKR's arguments have merit.  At *Alice* Step One, DKR's arguments fail
13   because the "focus of the claims" is not the widget builder, embedding element, or display
14   element—each of those things, to the extent it is claimed at all, is only a single claim limitation.
15   But at *Alice* Step One, the ***only*** question is whether the overall "focus" of the claims is the
16   computerization of an abstract idea or not.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S.
17   208, 217 (2014) ("First, we determine whether the claims at issue are directed to one of those
18   patent-ineligible concepts.").  In the Buy Button Patents, the indisputable ***focus*** of the claims is
19   computerization of the fundamental business practice of combining a product advertisement
20   with an order form (i.e., the use of a "buy button").

21   At *Alice* Step Two, DKR's arguments fail because the use of a widget builder, an
22   embedding element, and a display element are not new or unconventional computer technology,
23   as the Buy Button Patents themselves concede.  Far from contending that there is something
24   novel or inventive about the types of computer servers claimed, the use of multiple servers to
25   execute programs, or the use of the Internet to enable online purchasing, the Buy Button Patents
26   themselves indicate that wholly ***conventional*** computing technologies is used to implement the
27   abstract idea.  It is "not enough … to merely improve a fundamental practice or abstract process
28   by invoking a computer merely as a tool." *Customedia Techs., LLC v. Dish Network Corp.*, 951

F.3d 1359, 1364 (Fed. Cir. 2020).

DKR's procedural arguments that Shopify relies on representative claims and that the Court should rely upon DKR's expert declaration instead of the patents are likewise misguided. Shopify expressly did not rely on representative patent claims. *See* Br. at 4. And, even if it had, DKR fails to explain how any claim of the Buy Button Patents survives *Alice* Step One or *Alice* Step Two. Likewise, DKR's arguments that its expert declaration should be considered are both unavailing and irrelevant. DKR does not dispute that an expert declaration cannot contradict the patent itself, as the declaration does. And DKR has not identified a single case in this district or from the Ninth or Federal Circuits in which an expert declaration purely stating opinion and devoid of factual allegations was incorporated into pleadings. But even if that were the law, DKR fails to identify a single statement of its expert that would change the § 101 analysis.

As detailed below, each of DKR's arguments fails. Shopify's motion should be granted.

## I.  ARGUMENT

As Shopify explained in its Opening Brief, the claims of the Buy Button Patents merely computerize the longstanding business practice of combining advertisements with order forms. The claims describe using conventional computer technology long predating the patents, such as web widgets and client-server systems, to create advertisements on the Internet with a clickable buy button. The Buy Button Patents' computerization of a known advertising practice is the hallmark of an abstract idea. *See*, *e.g.*, *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) (invalidating loan-processing automation patent because "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology"); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 712 (Fed. Cir. 2014) (claims directed at advertisements used as exchanges or currency were ineligible despite reciting a general purpose computer and the Internet). DKR's counter arguments on the merits do not withstand scrutiny as the claims as a whole are focused on an abstract idea and present neither a technological improvement nor an inventive concept.

**A.    At *Alice* Step One, The "Focus" of the Buy Button Patent Claims is an Unpatentable Abstract Idea.**

At *Alice* Step One, the analysis does not focus on individual limitations (subparts) of the

-2-

1  patent's claims.  Rather, the only question at *Alice* Step One is whether the patent's claims are
2  "directed to" an abstract idea.  *Alice*, 573 U.S. at 220.  In other words, "[t]he inquiry at this first
3  stage looks at the 'focus' of the claims, and their 'character as a whole.'"  *In re Rosenberg*, 813
4  F. App'x 594, 596 (Fed. Cir. 2020) (internal citation omitted).

5        DKR's claims, as a whole, are directed to a computerized technique for combining an
6  order form (buy button) with a product advertisement.  Br. at 11.  In opposition, DKR seeks to
7  characterize the claims as "directed to enhancements in web widget technology" and
8  "improvements in computer capabilities."  Opp. at 12.  Specifically, DKR points to three
9  aspects of the patents' claims: (1) a widget builder, (2) embedding widgets into websites or
10 social media, and (3) widgets including a display element.  *Id*. at 12-13.  But even a passing
11 review of the claims themselves shows that none of these things is the "focus" of the claims as a
12 whole.  Rather, to the extent claimed at all, these are only individual claim limitations that
13 describe the technology used to carry out the abstract idea (combining a product advertisement
14 with an order form) that is the overall focus of the claims as a whole.  Thus, DKR's argument at
15 *Alice* Step One fails because it confuses *Alice* Step One (which examines the "focus" of the
16 claims "as a whole") with *Alice* Step Two (which examines individual limitations of the claims
17 to determine whether any recites an "inventive concept" that transforms the abstract idea into
18 patent eligible subject matter).[1]

19       Indeed, the Buy Button Patents repeatedly make clear that the claims are directed to
20 facilitating customer purchases, not a widget builder, embedding element, or display element.
21 For example, the patents explain that the purpose of the claims is to "use viral distribution of
22 multimedia content and to exploit social media marketing trends to engage in purchase
23 transactions and other forms of electronic commerce directly with current and prospective
24 customers from web widgets over the Internet." '785 Patent, 2:12-17.[2]  In other words, the Buy
25 Button Patents' focus is advertisements on the Internet that allow direct purchase transactions

---

[1] DKR's arguments about the individual limitations also fail because the claims recite only resulting capabilities. *See Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (claims abstract where they "do not claim a particular way of programming or designing the software … but instead merely claim the resulting systems").

[2] Shopify's motion cited to the '678 patent, explaining that all asserted patents share a common specification.  Br. at 2.  Because DKR's Opposition cites primarily to the '785 patent, Shopify cites to the '785 patent in this brief.

(i.e., the computerization of advertisements with order forms).

Critically, none of the Buy Button Patents' claims state in their preambles that they are directed to improving a widget builder, a multi-server embedder, or a display element for applications. DKR simply plucked these elements from claim limitations (of which there are dozens) and has wholly disregarded the overall focus of the claims. In fact, the claim limitations that DKR now alleges to be the focus of their Buy Button Patents (improvements to a widget builder, embedding element, or display element) are expressly directed to incorporating a buy button in an advertisement on the Internet. *See, e.g.*, '785 patent, claim 1 at Preamble (stating claim is directed to a "method for embedding a buy button for an electronic commerce store"); *see also* '785 patent, claims 7, 14; '995 patent, claims 1, 9, 14; '678 patent, claims 1, 9, 15; '237 patent, claims 1, 9, 15.

DKR attempts to distinguish *Free Stream Media Corp. v. Alphonso Inc.* by arguing that the Buy Button Patents' claims "recite the requisite 'how'" the inventive improvements are achieved because it explains how widgets are "created and deployed."[3] Opp. at 16-17. But DKR is conflating a claim that simply directs the use of generic computer components (patent ineligible) with one that describes how to implement new and improved technology. The court in *Free Stream Media* invalidated claims allowing communication devices to overcome a security barrier because they similarly did not describe how to achieve a claimed improvement. 996 F.3d 1355, 1363-64 (Fed. Cir. 2021). Here too, the claims do not explain "how" to make a web widget, a computer server, or a display element. They simply refer to these conventional technologies as tools to implement the abstract idea.[4] *See Customedia Techs*, 951 F.3d at 1365

---

[3] DKR's references to Shopify's arguments during prosecution of Patent Nos. 11,853,981 and 11,640,629 is immaterial. The Patent Examiner rejected Shopify's argument raised during prosecution of the '981 patent. Moreover, Shopify amended the claims to include specific improvements to address the examiner's concerns. And, unlike the Buy Button Patents, Shopify's arguments in the '629 patent prosecution concerned amendments that did not broadly cover basic ideas, such as using generic computer components to computerize a known practice.

[4] DKR's criticism of *Elbaum* (Opp. at 17) is likewise inapposite. Like *Elbaum*, the claims here recite generic actions, like "'storing, receiving, analyzing, and processing data'" but fail to provide "any technological details for" DKR's alleged improvements. *In re Elbaum*, No. 2021-1719, 2021 WL 3923280, at *2 (Fed. Cir. Sept. 2, 2021). DKR is thus incorrect that Shopify's arguments "require that virtually all modes of e-commerce fail *Alice* step one." Opp. at 15. Likewise, contrary to DKR's allegations (Opp. at 16), nothing in the claims is unique to the problems of social media marketing. The Buy Button Patents' claims fail because they are devoid of any details regarding how to program or otherwise solve technological problems and merely claim the resulting systems.

-4-

(claims invalid when computer components "merely used as a tool" to implement abstract idea).

### B. Under *Alice* Step Two, The Claims Of The Buy Button Patents Do Not Add An Inventive Concept

*Alice* Step Two requires courts to look at the individual claim limitations alone, and as an ordered combination, to determine whether any of those limitations recites an "inventive concept." *Alice*, 573 U.S. at 217. In other words, claims will fail at *Alice* Step Two unless they recite some **specific improvement to computing technology itself**, rather than the use of conventional technology to carry out the abstract idea. *Customedia Techs.*, 951 F.3d at 1366 ("[T]he invocation of 'already-available computers that are not themselves plausibly asserted to be an advance … amounts to a recitation of what is well-understood, routine, and conventional."). The use of existing computer technology to carry out an abstract idea—even if this is the first time computers have been used to perform that abstract idea—is not an "inventive concept." *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("We have repeatedly held that such invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea") (quotations omitted); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 893 (Fed. Cir. 2019) (explaining at *Alice* Step Two that "a more efficient advertising campaign, even if novel … is an advance 'entirely in the realm of abstract ideas.'"); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (explaining at *Alice* Step Two that "a claim for a *new* abstract idea is still an abstract idea"). As Shopify demonstrated in its brief, the Buy Button Patents fail to describe any improvement to computer technology that would transform the claimed abstract idea into a patent eligible invention. Br. at 14-17, 19-22.

The only arguments DKR raises at *Alice* Step Two are the use of a widget builder, embedding element, and display element. Opp. at 19-21. But none of these, alone or in combination, is described in the Buy Button Patents as a new or improved computer technology. Rather, the Buy Button Patents themselves ***expressly confirm*** that only ***conventional computer technology*** is used to carry out the claimed invention of combining a product advertisement

with an order form.[5]

***First***, DKR argues that the "embedding element" allows the widget to be executed on a separate server from the website into which it is embedded to "universally place and update such widgets," and that this alleged improvement amounts to an inventive application. Opp. at 19-20. But this argument finds no support in the Buy Button Patents' claims or the specification. The claims do not recite how to make the widget compatible with multiple types of websites, nor even require that it be so. And nothing in the specification asserts ***in any way*** that the use of two servers enables compatibility with multiple websites. DKR's only support for this argument is expert ***opinion***. But expert opinion "does not transform a claim reciting only an abstract concept into a patent-eligible system or method." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013). And expert opinions that contradict the patent, like that on which DKR relies, must be disregarded. Br. at 23-25. Because the patents do not purport to solve any technological problem associated with the use of multiple servers, their use cannot be a technological improvement.

***Second***, DKR argues that the use of a widget builder is another "technological improvement" to computer capabilities. Opp. at 20. But the Buy Button Patents do not claim to have invented widget builders, nor do they provide—much less recite in the patents' claims— any instruction on ***how*** to create widget builders that improve upon known widget builders. *See generally* '785 Patent. To the contrary, the claims recite only the ***functions*** of the widget builder, such as "receiv[ing] the image and metadata from the storage resource" and "generat[ing] a product listing" with certain information. *See* Opp. at 2, 14 (quoting '995 patent, claim 1). Such functional claiming is the hallmark of subject matter ineligibility at *Alice* Step Two. *See, e.g.*, *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (claim simply recites the use of generic features of cellular telephones, such as a

---

[5] DKR attempts to distinguish the technology claimed in the patents from abstract, invalid claims that have "pre-computer analogue[s]" by arguing that "unlike the 'brick and mortar' (i.e., physical reality) magazine order form, the DKR Patents enable the consumer to conduct a *completed* e-commerce transaction with the ability to instantaneously access/download the multimedia content." Opp. at 20-21. But DKR cites nothing to support this, and for good reason—the claims simply do not include any limitation directed to "the ability to instantaneously download the multimedia content."

-6-

1  storage medium and a graphical user interface, as well as routine functions, such as transmitting
2  and receiving signals, to implement the underlying idea.").

3  ***Third***, DKR argues that the "store display element" was an improvement to web widgets
4  because it created a "one-stop shop … that allows a consumer to conduct a complete transaction
5  quickly and without being re-routed to another platform." Opp. at 19. But "one-stop shop" is
6  just the idea of buying from an advertisement with an order form, i.e., a restatement of the
7  abstract idea. *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021)
8  (holding claims fail at *Alice* Step Two when "the purported improvements … just restate the
9  abstract ideas"). Likewise, the "display element" DKR claims is just known widget technology
10 used in a conventional manner to combine buy buttons with advertisement displays on the
11 Internet. Indeed, the Buy Button Patents expressly concede that web widgets already had a
12 display element for applications such as "clocks, event countdowns, auction-tickers, stock
13 market tickers, daily weather reports and flight arrival information." '785 Patent, 2:5-6. These
14 applications are simply replaced with another generic application—a "transaction processing
15 service" such as "PayPal" or "Amazon Flexible Payment Service" "for the provision of credit
16 card, debit card, or bank account information and completion of the purchase transaction." *Id*.,
17 5:47-50, 17:64-65, 18:11. Thus, the Buy Button Patents confirm that the store display element
18 is known web widgets technology and do not present a technological improvement.

19  DKR also argues that *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir.
20 2014) is "dispositive" because the *DDR* patents had "similar features" to the Buy Button
21 Patents. Opp. at 18. That is completely wrong. In *DDR*, the claims themselves "specif[ied]
22 ***how*** interactions with the Internet are manipulated to yield a desired result" and improved on
23 conventional technology. *DDR,* 773 F.3d at 1257-58 (emphasis added) (cautioning that "not all
24 claims purporting to address Internet-centric challenges are eligible for patent"). In that case,
25 the patents recited "a specific way to automate the creation of a composite web page by an
26 'outsource provider' that incorporates elements from multiple sources in order to solve a
27 problem faced by websites on the Internet." *Id.* at 1259. Here, by contrast, the claims do not
28 recite any specific "way" to make a web widget builder, use separate servers to place web

widgets in host websites, or display widget applications that process transactions. Instead, they use a generic widget builder, embedding element, and display element to implement the abstract idea of combining a product advertisement with a buy button, **never explaining** *how* these elements are implemented from a computer science or engineering standpoint. DKR's arguments therefore fail for the same reason there was no inventive concept in *Free Stream Media*: the Buy Button Patents provide an alleged solution that uses "generic features, as well as routine functions, to implement the underlying idea." *Free Stream Media*, 996 F.3d at 1366.

### C. DKR's Expert Declaration Does Not Make the Buy Button Patents Valid

All but conceding that the Buy Button Patents are invalid on their face, DKR's opposition begins by asking the Court to spare the patents based on arguments included in the declaration of their paid expert. Opp. at 7. DKR's argument fails because (1) Dr. Keller's statements do not change the subject matter eligibility analysis and (2) such an expert declaration cannot be incorporated into the pleadings.

***First***, DKR does not dispute that allegations in the complaint or an expert declaration cannot be used to contradict the patent itself. Br. at 23-24. Yet, the declaration repeatedly does just that. For example, it alleges the asserted claims are patentable due to an "unconventional embedding step" where the "buy button is operated on a separate server than that of the website." Dkt. 36-5 at 9. But the Buy Button Patents contradict this *ex post facto* attorney/expert argument because they provide no explanation at all as to how to perform "embedding." *See supra* at 6; Br. at 15-16, 18-19. For example, '785 patent claim 1 merely recites generating a buy button on a first server and embedding it on a website hosted on a second server. '785 patent, claim 1. Thus, even if the Court accepts the expert's declaration (it should not), it cannot change the patentability analysis as his statements are inconsistent with the patents.

***Second***, as explained in Shopify's motion, Dr. Keller's declaration is not a "written instrument" under Rule 10(c) and thus should be disregarded. Br. at 22. The cases DKR cites confirm that the declaration cannot be incorporated into the pleadings. In both *Rutherford* and *In re Herbalife*, this Court **declined** to consider the expert reports attached to the complaint. *Rutherford v. USA Gas*, No. 19-cv-01448-JAK-FFM, 2020 WL 13925954, at *3 (C.D. Cal.

-8-

1   Mar. 31, 2020) (also striking paragraphs in complaint relying upon the attached report because
2   "a report prepared by an expert … which proffers evidentiary support for the factual allegations
3   … does not form the basis of the claim in the case in an accepted manner."); *In re Herbalife,*
4   *Ltd. Sec. Litig.*, No. 14-cv-2850-DSF-JCG, 2015 WL 12734014, at *1 (C.D. Cal. July 28, 2015)
5   (declarations did not contain any factual allegations that "form the basis of the [Second
6   Amended Complaint] but rather appear to have been generated for purposes of prosecuting this
7   litigation" and thus are not "'written instrument[s]' under Rule 10(c).").
8       And, unlike in *In re MannKind Securities Actions*, Dr. Keller's declaration does not
9   provide specific ***factual*** allegations. *In re MannKind Sec. Actions*, 835 F. Supp.2d 797, 821
10  (C.D. Cal. 2011) (considering, in a securities fraud class action, an expert declaration because it
11  included specific factual allegations regarding existing FDA practices). Instead, the declaration
12  contains 15 pages of ***opinion*** on the patent eligibility of the Buy Button Patents' claims. Br. at
13  23. Dr. Keller does not allege any specific facts about prior art systems or methods, or include
14  any other statements of fact.[6] *See* Dkt. 36-5 at 5-6. These legal statements (and allegations in
15  the amended complaint incorporating those statements) do not, and cannot, constitute a factual
16  basis for DKR's amended complaint because they provide no facts at all. *Rutherford*, 2020 WL
17  13925954, at *3 (striking allegations in complaint because they recite opinions).[7]

18      **D.**    **DKR's Argument That Claims Featured in the Amended Complaint Are Not Representative Is Without Merit**
19  
20      Finally, DKR argues that Shopify's motion fails to address each of the Buy Button
21  Patents' 74 claims and should consequently be denied on that basis. Opp. at 9-10. DKR is
22  wrong. Shopify's Opening Brief specifically addresses and explains the ineligibility of all 74
23  claims individually, including each and every unique limitation recited in every claim. *See* Br.
24  at 17-22. For example, while DKR misleadingly asserts that Shopify did not address claims 6
25  and 17 of the '237 patent, Shopify did so specifically. Br. at 20-21. Thus, DKR's statements

---

[6] Moreover, the state of the prior art is used to assess novelty and non-obviousness; not whether an idea is abstract. *See Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019) ("an abstract idea by itself in a claim—even if the idea is novel and non-obvious—is not enough to save it from ineligibility"). Any alleged novelty does not change that the claims are directed to the abstract idea of computerization of advertisements with order forms.
[7] DKR does not dispute that amended complaint paragraphs 59-67 make conclusory non-specific allegations—that the claims address and "solve" "technological problems"—that should be ignored under *Iqbal*. Br. at 25.

1  that "Shopify resorts to overgeneralizing DKR's claims" and that Shopify "completely ignores"
2  certain claims are facially wrong.  Opp. at 9.  In contrast, DKR has failed to show that any of
3  the 74 claims survive the ineligibility analysis required under *Alice*.  *See supra* 2-8.
4        Moreover, even if Shopify did rely on representative claims (it did not) doing so would
5  be consistent with U.S. Supreme Court and Federal Circuit law.  Br. at 4-6; *see also Cleveland*
6  *Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1359-60 (Fed. Cir. 2017)
7  (affirming dismissal of all asserted claims as patent ineligible based on representative claims).[8]
8        DKR is also incorrect that claim 1 of each Buy Button Patent could not serve as
9  representative without the Court first conducting claim construction.  Opp. at 10.  DKR does not
10 propose any specific claim constructions for the terms it identifies, such as "transaction
11 processing service."  Courts have repeatedly found that a generic request to perform claim
12 construction like DKR's is insufficient to overcome a motion to dismiss.  *Trinity Info Media,*
13 *LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023) ("patentee must do more than
14 invoke a generic need for claim construction … to avoid grant of a motion to dismiss under §
15 101."); *see also Cleveland Clinic Found.*, 859 F.3d at 1360 ("[W]e have repeatedly affirmed §
16 101 rejections at the motion to dismiss stage, before claim construction.").  Because DKR does
17 not identify any claim construction that would change the *Alice* analysis, it carries no weight.
18       And, in any event, the Buy Button Patents themselves demonstrate that the terms DKR
19 identifies do not confer patentability, but instead describe well-known conventional computing
20 technology.  *See, e.g.*, '785 Patent at 18:12-21 (describing "transaction processing service" as a
21 "means used to complete a commercial transaction (i.e., external service such as
22 Authorized.Net, etc. or an internal proprietary service.")).
23 **II.   CONCLUSION**
24       For the foregoing reasons, this case should be dismissed.

---

[8] DKR is incorrect that *Bilski* and *CyberFone* are inapplicable.  As in *Bilski*, the dependent claims add only trivial, conventional elements to the already conventional components claimed in the independent claims.  Br. at 7; *Bilski v. Kappos*, 561 U.S. 593, 612, (2010) ("adding token postsolution components did not make the concept patentable").  And just like in *CyberFone*, DKR does not make any substantive arguments that differentiate the dependent from the independent claims; indeed, DKR discusses only one dependent claim in its opposition.  Opp. at 9-10; *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014).

| | | |
|---|---|---|
| 1 | Dated: April 25, 2024 | By: /s/   *Gregory H. Lantier* |
| 2 | | Gregory H. Lantier (*pro hac vice*) |
| | | Gregory.Lantier@wilmerhale.com |
| 3 | | Haixia Lin (*pro hac vice*) |
| | | Haixia.Lin@wilmerhale.com |
| 4 | | WILMER CUTLER PICKERING |
| | |    HALE AND DORR LLP |
| 5 | | 2100 Pennsylvania Ave |
| | | Washington, DC 20037 |
| 6 | | Telephone: (202) 663-6000 |
| | | Fax: (202) 663-6363 |

Liv Herriot (State Bar No. 267694)
Liv.Herriot@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Fax: (650) 858-6100

Henry Nikogosyan (State Bar No. 326277)
Henry.Nikogosyan@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5300

Attorneys for Defendant
SHOPIFY, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Shopify Inc. certifies that this brief contains 10 pages, which complies with the 10 page limit set by court order dated August 30, 2023.

By: /s/   *Gregory H. Lantier*

Gregory H. Lantier

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on April 25, 2024.

By: /s/   *Gregory H. Lantier*

Gregory H. Lantier